IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00250-KDB-WCM

| | |
|---|---|
| TERRY TREADWAY, | ) |
| Plaintiff, | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| v. | ) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Procedural Background

In August of 2020, Plaintiff Terry Treadway ("Plaintiff") filed an application for disability insurance benefits, alleging disability beginning April 25, 2019. Transcript of the Administrative Record ("AR") 146-152.

On December 22, 2022, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 7-25. That decision is the Commissioner's final decision for purposes of this action.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "psoriatic arthritis, fibromyalgia, obesity, depression, and anxiety." AR 12. After determining that Plaintiff's impairments did not meet or medically equal any of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…except occasional climbing ladders, ropes, or scaffolds and crawling; frequent handling and fingering; no overhead reaching with the left non-dominant arm; frequent climbing ramps and stairs, balancing, stooping, kneeling, and crouching; avoiding concentrated exposure to hazards; able to understand, remember, and carry out simple instructions and to maintain concentration, persistence, and pace on those types of tasks for two hour periods over the course of an eight-hour workday; can tolerate occasional interaction with the public; and is unable to meet fast paced, high production demands.

AR 15.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 20-21.

## III. Plaintiff's Allegations of Error

Plaintiff contends that, when developing her RFC, the ALJ improperly discounted her subjective symptoms.

2

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff

3

is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.

Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. "At this step, objective evidence is not required to find the claimant disabled." Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 95 (4th Cir. 2020). In cases involving fibromyalgia, the Fourth Circuit has recognized that "'symptoms are entirely subjective,' with the exception of trigger-point evidence" and that physical examinations of patients with fibromyalgia will usually yield normal results. Id. (citing Sarchet v.

Chater, 78 F.3d 305, 306 (7th Cir. 1996); Green-Younger v. Barnhart, 335 F.3d 99, 108–09 (2d Cir. 2003)).

Accordingly, "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." Id. at 97; see also India G. v. Kijakazi, No. DLB-20-1704, 2021 WL 3930430, at *3 (D. Md. Sept. 1, 2021) ("normal, objective clinical and laboratory results are not inconsistent with allegations of disabling pain. Thus, after *Arakas*, the use of that objective medical evidence to discount the plaintiff's complaints of the disease's limiting effects is improper in the Fourth Circuit"); cf. Shelby D. v. Kijakazi, No. 3:22-cv-234, 2023 WL 6444895, at *11 (S.D.W. Va. Sept. 29, 2023) ("a diagnosis of fibromyalgia…does not render a claimant per se disabled"); Lasharne W. v. Commissioner, Social Security Administration, No. 21-cv-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) ("[W]hile 'a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to

5

the extent they are inconsistent with the available evidence...'") (internal citation omitted)).

Here, the ALJ determined that Plaintiff had the severe impairments of psoriatic arthritis and fibromyalgia, among other things. AR 12.

When developing Plaintiff's RFC, the ALJ acknowledged Plaintiff's testimony that she had overall pain from arthritis that was worse in her feet and which would move up to her hips and back when she was on her feet, that she had difficulty moving and getting up and down, that her symptoms interfered with sleep and she was tired all day, that she had trouble lifting with her left side and reaching overhead but did not have difficulty reaching in all other directions, was unbalanced and stiff, and that she would become emotional and snappy when in pain and did not want people touching her and did not want to be in crowds. AR 15-16.

The ALJ also considered medical records reflecting Plaintiff's treatment for psoriatic arthritis and fibromyalgia simultaneously. AR 16. The ALJ noted that Plaintiff complained to her medical providers of pain and poor, unrestful sleep and that Dr. Ellison Smith, a rheumatologist, had reported Plaintiff's "significant tenderness to multiple tender points." Id. (citing AR 249-255). Further, the ALJ stated that Dr. Smith's October 30, 2019 treatment note indicated that Plaintiff's predominate symptoms were related to fibromyalgia and that he (Dr. Ellison) had emphasized the "importance of gentle regular

6

exercises, stress management, healthy sleep habits, and healthy diet" during the exam. Id. (citing AR 253). Additionally, the ALJ stated that, during a December 1, 2020 visit to her primary care provider, Plaintiff reported that she preferred to stop taking gabapentin and to use a muscle relaxer instead, "which offer[ed] better pain relief." Id. (citing AR 388). After reviewing additional medical records indicating that Plaintiff's medications had continued unchanged, the ALJ stated that he had accounted for Plaintiff's psoriatic arthritis and fibromyalgia by:

> limiting her to light work with occasional climbing ladders, ropes, or scaffolds; frequent climbing ramps and stairs, balancing, stooping, kneeling, and crouching; occasional crawling; frequent handling and fingering; no overhead reaching with the left non-dominant arm; and avoiding exposure to hazards.

AR 17.

The ALJ then went on to explain that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were "inconsistent" because they were not supported by the medical evidence of record and that, "[w]ith regard to her fibromyalgia, [Plaintiff] reported better pain relief with muscle relaxers...and she has been continued on this medication with no changes." AR 19. The ALJ additionally explained that Plaintiff's "report of actual activities including completing personal care, preparing meals, performing household chores, reading, shopping, spending

7

time with friends and family riding around mountain roads, managing funds and healthcare, and watching television indicates that she is able to get about in a manner that is not restricted to a disabling degree." Id.; see also AR 192-197.

The ALJ's simultaneous consideration of Plaintiff's psoriatic arthritis and fibromyalgia makes it difficult to determine whether the ALJ improperly relied on objective clinical findings in discounting Plaintiff's alleged limitations stemming from pain. For example, the ALJ pointed out, when discussing both impairments, that certain of Plaintiff's medical records reflected "no abnormal findings," a "normal range of motion," and a "normal gait." AR 16; see also Jetton v. Commissioner of Social Security, No. 5:20-cv-00138-FDW-DSC, 2022 WL 966858, at *3 (W.D.N.C. March 30, 2022) ("In determining the RFC, however, the ALJ did not independently analyze fibromyalgia or the specific evidence relied on to discredit Jetton's subjective complaints stemming from fibromyalgia….the ALJ noted that Jetton's examination on one occasion revealed a 'normal range of motion' despite complaints of joint paint. The ALJ also stated, 'Notably, no more than conservative treatment was provided for these impairments.' This is the type of legal analysis Arakas precludes.") (internal citations omitted).

However, the ALJ did not discredit Plaintiff's alleged limitations stemming from fibromyalgia specifically based on the lack of objective medical

findings. To the contrary, the ALJ discussed medical records supporting Plaintiff's complaints of pain and tenderness and included limitations in Plaintiff's RFC to account for her fibromyalgia. See AR 17; see also Stiles v. Commissioner of Social Security, No. 1:21-cv-00085-RJC, 2022 WL 3256876, at *6 (W.D.N.C. Aug. 10, 2022) (affirming ALJ's analysis of plaintiff's fibromyalgia and explaining that "unlike in Arakas, the ALJ never discounted Plaintiff's subjective complaints, nor did the ALJ ever specifically discredit Stiles' because she had a normal gait. Instead, the ALJ found fibromyalgia to be a 'severe impairment' that was 'ongoing.' [and]…the ALJ still accounted for fibromyalgia in the RFC.") (internal citations omitted); Surrett v. O'Malley, No. 1:23-CV-00106-KDB, 2024 WL 190660, at *6 (W.D.N.C. Jan. 17, 2024), appeal pending, No. 24-1227 (finding that ALJ properly considered limiting effects of fibromyalgia where ALJ concluded that plaintiff could perform light work involving simple tasks and occasional climbing of ramps or stairs, occasional stooping, kneeling, crouching, or crawling) (internal citations omitted); compare Long v. Kijakazi, No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *4 (W.D.N.C. Dec. 30, 2022) (remanding where ALJ relied on "normal" medical findings when evaluating plaintiff's fibromyalgia and, when discounting the opinions of plaintiff's treating physicians, explained that "[a]lthough their examinations revealed multiple tender points, consistent with fibromyalgia,

the exams failed to consistently reveal range of motion limitations, weakness, manipulation difficulties, or mobility problems.").

Consequently, on balance, the undersigned is persuaded that the record sufficiently supports the ALJ's conclusion.

## VI. Recommendation

The undersigned therefore respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

Signed: August 15, 2024

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).